UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SPIRIDON ANTHOULIS,                                         :
                                                            :     **MEMORANDUM**
                         Petitioner,   :     **DECISION AND ORDER**
                                                            :
            - against -                                   :     12 Civ. 6253 (BMC)
                                                            :
STATE OF NEW YORK and THE                                   :
ATTORNEY GENERAL OF THE                                     :
STATE OF NEW YORK,                                          :
                                                            :
                        Respondents.  :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Petitioner brings this proceeding pursuant to 28 U.S.C. § 2254 seeking to set aside his conviction by guilty plea to one count of Grand Larceny in the Third Degree (a felony), and one count of Failing to Pay Prevailing Wages (a misdemeanor). For the grand larceny charge, petitioner was sentenced to time served and five years' probation. He received a conditional discharge on the failure to pay prevailing wages charge and agreed to a five-year bar from performing public work in New York State, as well as an order of restitution of up to $7.2 million. Petitioner's primary claim is that that he received ineffective assistance of counsel in negotiating the plea and thus did not knowingly and voluntarily plead guilty.

      This is petitioner's second habeas corpus petition. I dismissed the first one because his ineffective assistance of counsel claim was unexhausted. See Anthoulis v. New York, No. 11 Civ. 1908, 2012 WL 194978 (E.D.N.Y. Jan. 23, 2012). The background of petitioner's claims is set forth in detail in that decision and it will not be repeated here; the claims are the same. What has changed since that decision is that petitioner has exhausted his ineffective assistance claim

through a N.Y. C.P.L. § 440.10 motion. That motion was denied by the §440 motions court, which considered separately his state and federal constitutional claims of ineffective assistance of counsel, and rejected them on the merits.

## I. Ineffective Assistance

Because the §440 court decided this claim on the merits, my review is subject to the deferential standard of 28 U.S.C. § 2254(d). This statute provides that federal habeas corpus relief is only available if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To grant habeas relief under the "unreasonable determination of the facts" prong of § 2254(d)(2), state court factual findings are presumed correct and can be rebutted only by clear and convincing evidence that the factual findings were unreasonable. 28 U.S.C. § 2254(e)(1); see also Wiggins v. Smith, 539 U.S. 510, 551, 123 S. Ct. 2527, 2551 (2003). The Supreme Court has clarified that this standard of review is extremely narrow, intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, —— U.S. ——, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S. Ct. 2781, 2796 (1979) (Stevens, J., concurring)).

State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, —— U.S. ——, 131 S. Ct. 1305, 1307 (2011) (internal quotation marks and citation omitted), and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility of disagreement" among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law.[1]

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, a petitioner must satisfy the two-part inquiry set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); see also Lafler v. Cooper, ⸺ U.S. ⸺, 132 S. Ct. 1376, 1384 (2012) (holding that the two-part inquiry of Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel). First, he must first show that his "counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that counsel made errors serious enough to violate defendant's guarantee of counsel via the Sixth Amendment. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985). Second, petitioner "must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. This means that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Missouri v. Frye, ⸺ U.S. ⸺, 132 S. Ct. 1399, 1409 (2012) (noting that "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for

---

[1] Harrington, 131 S. Ct. 770, and Cavazos v. Smith, ⸺ U.S. ⸺, 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999)), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," Harrington, 131 S. Ct. at 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20 (2d Cir. 2011) (granting motion to vacate its earlier decision granting habeas relief upon consideration of Cavazos), vacating, 649 F.3d 132 (2d Cir. 2011).

3

counsel's errors, he would not have pleaded guilty") (internal quotation marks and citation omitted).

As the state courts expressly noted, petitioner's decision to enter into the plea had to be evaluated against the dire consequences that he would have risked had he rejected it. He ended up with a potential maximum of 6 months incarceration, which eventuated to no jail time, a five-year ban from undertaking public contracts, and restitution. Not to minimize these consequences, but the risks he was facing went beyond the two charges to which he pled. The Attorney General was threatening to indict him, his wife and his brother-in-law on multiple class-C felony charges (as opposed to the single class-D felony to which he pled) in connection with the false certification allegations that could have carried jail terms of 5 to 15 years for each of them.

Petitioner, of course, presents it differently. He believes better advice at the time of his plea would have caused the charges and the potential charges to be dropped or dismissed or else he would have fought them and taken his chances. With better or at least different legal advice, he now does not believe there was any better case against his wife or his brother-in-law, calling it "suspect at best," than there was against him (he does not mention the benefit of avoiding the emotional toll of putting his wife and brother-in-law through a felony prosecution). He notes both that his wife ended up pleading guilty to a misdemeanor charge, although receiving no jail time, and that in any event, it is unlikely that she would have been sentenced to jail time under any view of the potential charges against her.[2]

---

[2] Petitioner also notes, in passing, that his lawyers were also representing his wife and brother-in-law, and alludes to the conflict of interest as further "tainting" their advice. There is nothing in the record supporting the claim of multiple representation, and it does not appear to have been urged upon the state court as a ground for ineffective assistance.

4

Petitioner's different perspective is based on his belief that since there were conclusive, dispositive legal defenses to all of these charges, his attorney should have advised him of them, and if he had, the Attorney General would have had no leverage and would have been forced to back down, or else petitioner would have been acquitted at trial or otherwise had the charges dismissed. Therefore, his argument is, he would not have pled guilty had he been properly advised of these defenses, which is the test he must meet to warrant habeas corpus relief. The difficulty with his argument, however, is that, except as to one of the arguments, the record indicates that these defenses were not necessarily conclusive or dispositive.

For example, petitioner contends that the state statute under which he was charged required the Attorney General to show a monetary loss to the New York City Housing Authority ("NYCHA"), and since his contract was for a flat rate payment, NYCHA was not harmed by his underpayment of employee wages. The Attorney General, in contrast, points to the contracts' provision allowing NYCHA to retain the amounts of any underpayments, so that it did in fact overpay. Petitioner replies that NYCHA would only have held these funds as trustee for the workers, and thus it does not qualify as a victim under the statute, citing a twenty year-old *nisi prius* case for that proposition. I do not know who is right as a matter of state criminal law, but it is not readily apparent that the state courts unreasonably applied Strickland in determining that counsel was objectively reasonable in recommending acceptance of the plea offer despite this issue, or that petitioner would have taken the plea offer even had he known of this potential defense, considering the potentially calamitous consequences if petitioner was convicted of multiple felonies.

Similarly, petitioner contends that the PriceWaterhouseCoopers ("PWC") audit, upon which the Attorney General relied, improperly found misclassification of workers into lower-

priced prevailing wage categories because the classifications petitioner used in his business were in fact allowed. But there is extensive case law over the intricacies of classifying workers in the prevailing wage context – prevailing wage law is a maze unto itself. See Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007). As petitioner himself acknowledges: "The classification of workers' duties is an amorphous area that is fraught with differing interpretations." It is therefore again not immediately apparent that the state courts unreasonably applied Strickland in holding that petitioner's counsel, rather than undertaking his own audit to "check" PWC's calculations and engage in a procedural fight, was objectively reasonable in advising his client to take the plea or in finding that petitioner would have accepted the plea in order to avoid a wage classification fight before a jury with potentially lengthy incarceration if a jury accepted the PWC audit. Petitioner's separate point as to the allowance and calculation of interest and penalties under state law reflects again reflects only a disagreement as to how state law should apply.

  Respondent concedes that the misdemeanor charge to which petitioner pled was time-barred, but argues that in exchange for not bringing multiple felony charges against petitioner, his wife, and his brother-in-law, recommending the trade-off was not objectively unreasonable. In addition, petitioner argues that as to two construction contracts included in the felony charge, the false wage certifications were equally time-barred, and that recognition of this would have reduced his restitutionary obligation from about $7 million to about $5 million. The §440 court did not expressly address these arguments but they are deemed rejected on the merits.

  However, respondent's argument misses the point to some degree because petitioner's claim is not that, or at least not only that, his former counsel should not have recommended the plea agreement. Rather, he contends that his current counsel did not even advise him that he had

6

these potential defenses, and thus petitioner was deprived of the ability to make a meaningful choice of whether to accept the plea. In this regard, petitioner contends that the failure to raise these defenses is akin to the omission in Padilla v. Kentucky, –– U.S. ––, 130 S. Ct. 1473 (2010), where the defense counsel made no mention of the deportation consequences that would flow from his client's guilty plea.

The issue is best understood by contrasting the advice shown on this record that petitioner's counsel actually gave him against the advice that, although less than petitioner now says his former counsel should have given him, would still have resolved the constitutional issue present here. The advice counsel actually gave was that petitioner, his wife, and his brother-in-law were facing multiple felony charges which, if convicted, could subject them to 5-15 year sentences if petitioner did not agree to accept a plea that would expose him to at most six months incarceration, debarment of five years, and restitution of up to $7.2 million. The advice that counsel *could* have given him was that there was a solid statute of limitations defense to the misdemeanor charge, an arguable partial statute of limitations defense to the felony charge, a viable but not certain motion to dismiss any felony charges on the ground that NYCHA was not a "victim" as defined by the statute, and an ability to investigate and perhaps undermine the PWC audit on worker classification. We can further assume, as to this potential advice that was not given, that petitioner's former counsel would have recommended that notwithstanding these possible defenses, petitioner should nevertheless accept the plea offer because of the risks of not taking it. Had petitioner's counsel given this advice and petitioner still accepted the plea offer, this habeas corpus petition would be clearly without merit. The fact that he did not give this advice, leaving petitioner in partial darkness, brings the case one step closer to an unreasonable application of Strickland.

7

If this case were being considered under a standard of *de novo* review, it therefore might be appropriate to find that the Strickland standard has been met. It seems clear that petitioner pled guilty in something of a vacuum. He had two lawyers with differing specialties, and neither one apprised him that these potential defenses existed (we have no evidence from one of the two attorneys, but the other one, Mario Biaggi Jr., has submitted an affidavit acknowledging that these defenses were not discussed, effectively conceding his own ineffectiveness). When a defendant offers newly-found defenses in a habeas petition that are plainly without merit, his protestations about his lawyer's ineffectiveness in failing to alert him to those defenses are easy enough to discount. See Herring v. Artuz, 28 F. Supp. 2d 852, 855 (S.D.N.Y. 1998). That is not the case here; most of the new defenses are at least arguable, and one, the statute of limitations on the misdemeanor charge, is conceded to be correct.

There is no indication of any strategic purpose in not alerting him to these defenses – e.g., there is no suggestion that the Attorney General was putting petitioner on a short timetable to accept the plea, thus not permitting much investigation, discussion, or consideration of defenses. And it appears fair to conclude that it was only the favorable terms of the plea, the uncertainty of any potential defenses, and the ruinous consequences of refusing to take the plea offer that motivated counsel's advice to accept it. Perhaps it could be argued that Strickland requires more from objectively reasonable defense counsel.

But in reviewing the state court decision under 28 U.S.C. § 2254(d), I am not conducting a *de novo* review. The state courts found that petitioner had not made an adequate showing of prejudice; indeed, not only, as in many cases, is such a finding legally implied by the denial of an ineffective assistance claim, see Cullen v. Pinholster, –– U.S. ––, 131 S. Ct. 1388, 1406 (2011), but in this case, the state court made that finding expressly: "[D]efendant must show that

8

he would not have taken the plea but for counsel's alleged ineffectiveness. In this case the defendant fails to make an actual showing of prejudice due to his attorney's alleged misconduct." The §440 court made this finding notwithstanding an affidavit from petitioner averring quite expressly that he would not have taken the plea had he known of the newly discovered defenses.

Under the limited standard of review required by 28 U.S.C. § 2254(d), I cannot find that the state courts unreasonably applied Strickland as to this prejudice prong; that is, in rejecting petitioner's statement that he would not have pled guilty if he had been given the opportunity to consider the defenses of which his new counsel has advised him. Whether viewed as a factual finding as to what he would have done, see Cullen v. United States, 194 F.3d 401, 405 (2d Cir. 1999) ("the determination of the likelihood that Cullen would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one"), or a mixed question of law and fact as to whether petitioner has been prejudiced, see Cornell v. Kirkpatrick, 665 F.3d 369, 380 (2d Cir. 2011) (noting that a court's determination that the defendant was not prejudiced is a "mixed question of law and fact"), I think "fairminded jurists" could disagree as to what petitioner would have done if advised of his potential defenses described above or, stated otherwise, the state courts' determination of the facts was not unreasonable because petitioner did not present clear and convincing evidence that he would have rejected the plea offer. This conclusion arises from the circumstantial evidence that was before the state courts. The juxtaposition of the relatively minimal consequences of accepting the plea against the potentially devastating consequences of rejecting it, plus the fact that of the additional defenses offered, only one – the statute of limitations as to the misdemeanor charge – had a certainty of succeeding and thus was amenable

9

to a trade-off, are sufficient reasons for the state court to have rejected petitioner's hindsighted, self-serving statement that he would have refused the plea offer.

I therefore am compelled to find that petitioner has failed to demonstrate a right to habeas corpus relief based on ineffective assistance of counsel under 28 U.S.C. § 2254(d).

**II. Other Claims**

Petitioner offers several other grounds for habeas corpus relief, but they are all derivative of or controlled by the disposition of his ineffective assistance claim, and they fail for that reason.

First, petitioner, separately from his ineffective assistance claim, argues that his plea was not knowing and voluntary because his attorneys failed to apprise him of the various defenses he had under state law. Petitioner offers no grounds for deeming the plea involuntary except the allegedly inadequate assistance of his counsel. Since I have rejected that argument, there is no reason for not giving deference to the §440 court's disposition of this claim.

Second, petitioner raises each of the alleged errors in interpreting state law – the statute of limitations, legal unavailability of interest and penalties, and lack of a "victim" of the larceny because NYCHA was merely a trustee – that he raised on direct appeal. The Appellate Division held that these claims were waived because petitioner signed an appeal waiver in connection with his plea. However, at the time it affirmed its conviction, the Appellate Division declined to consider petitioner's off-the-record ineffective assistance of counsel claim. Respondent nevertheless contends that the Appellate Division's invocation of the waiver, referred to as the "forfeiture rule," is an independent and adequate state law ground for the decision, making those claims unreviewable on federal habeas corpus. As the Appellate Division held, "Review of the

10

other claims raised by the defendant on appeal have been forfeited as a result of his plea of guilty." People v. Anthoulis, 78 A.D.3d 854, 855, 910 N.Y.S.2d 370 (2d Dep't 2010) (citations omitted).

A petitioner's federal claims may be procedurally barred from habeas corpus review if the state court invoked "independent and adequate" state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 729–33, 111 S. Ct. 2546, 2553-55 (1991). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 261–62 & 263, 109 S. Ct. 1038, 1042-43 (1989) (internal quotation marks omitted). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999) (internal quotation marks omitted). "[P]rinciples of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." Id. (internal quotation marks omitted).

I cannot find that petitioner's claims are procedurally barred. First, as to the Appellate Division decision to invoke the forfeiture rule, that Court did not have the opportunity to fully consider the impact of petitioner's ineffective assistance claim on the issue of whether the waiver was knowing and voluntary. Rather, it held: "The defendant's contention that he was deprived of the effective assistance of counsel rests mainly on matter dehors the record and, thus, cannot be reviewed on direct appeal. To the extent this contention is reviewable on the record before us, we find that defense counsel provided meaningful representation with respect to the defendant's plea of guilty." Anthoulis, 78 A.D.3d at 854-55 (citations omitted). That is why I directed

11

petitioner to seek collateral review in state court before proceeding with his habeas corpus petition here.

Yet New York law is clear that a waiver of appeal will not be upheld if it is the result of the sort of ineffective assistance of counsel that directly pertains to the defendant's decision to plead guilty – in other words, the claim must "go to the very heart of the process." People v. Parilla, 8 N.Y.3d 654, 659, 838 N.Y.S.2d 824 (2007) (quoting People v. Hansen, 95 N.Y.2d 227, 230, 715 N.Y.S.2d 369 (2000)). This does not include missed opportunities to seek dismissal or other errors in pretrial proceedings distinct from the plea negotiation process itself. See id.; People v. Di Raffaele, 55 N.Y.2d 234, 448 N.Y.S.2d 448 (1982) (claims of preindictment prosecutorial misconduct foreclosed by waiver); People v. Friscia, 51 N.Y.2d 845, 433 N.Y.S.2d 754 (1980) (speedy trial claims foreclosed by waiver). These cases express the concern that if a defendant decides to plead guilty based on erroneous advice on a material point given in the context of his decision to plead guilty, then the resulting plea cannot be truly "knowing and voluntary." See, e.g., People v. Finkelstein, 25 A.D.3d 456, 457, 807 N.Y.S.2d 97 (1st Dep't 2006) ("Although defendant waived his right to appeal, his claim that his attorney rendered ineffective assistance . . . is reviewable to the extent it affects the voluntariness of his plea . . . .").

In Parilla, the defendant had an ostensible argument that the statute of limitations barred the claim against him. On the eve of trial, he considered accepting a plea agreement. Through counsel, he inquired of the court (seeking, in effect, an advisory opinion) as to whether the court would grant a motion to dismiss based on the statute of limitations. The court obliged, and advised him that such a motion would be denied because there was a statutory toll. The defendant thereupon accepted the plea offer, which included an appeal waiver. After sentencing, he challenged his plea in a consolidated direct appeal and collateral proceeding, arguing that his

12

counsel was ineffective for having failed to move to dismiss on statute of limitations grounds. The Court of Appeals upheld the appeal waiver and declined to hear the claim:

> [T]his is not a case where the alleged ineffectiveness of counsel goes to the voluntariness of defendant's plea and waiver of appeal. To the contrary, the record establishes that defendant's plea was intelligent, voluntary and knowing. Before he pleaded guilty, defendant was aware of the potential statute of limitations defense and the possible application of the CPL § 30.10(4)(a)(ii) tolling provision. After having an opportunity to weigh his options, defendant chose not to assert the defense, declined his right to a jury trial and waived his right to raise the limitations argument on appeal.

Parilla, 8 N.Y.3d at 660, 838 N.Y.S.2d at 824.

This case, of course, is the opposite of Parilla. It seems undisputed that petitioner's counsel never advised him of the statute of limitations or other potential state law defenses to the charges. And the Appellate Division, as noted above, declined to review his ineffective assistance claim in its totality because it was largely based on facts outside of the record. Nor was the §440 court asked to determine the enforceability of the waiver. And while it may be inferred, in light of §440 court's decision rejecting the ineffective assistance of counsel claim and the Appellate Division's denial of leave to review that decision, that the waiver would have been upheld, none of the state court decisions in this case expressly applied the waiver upon full consideration of whether petitioner knowingly and voluntarily entered into the plea agreement. I therefore cannot find that the invocation of the waiver on the facts of this case was pursuant to a "firmly established and regularly followed" procedural rule.

Nevertheless, petitioner's state law challenges to the charges on which he pled guilty are not cognizable on habeas corpus review. The construction and application of state law is for the state courts, within the limits of the due process clause. See Mannix v. Phillips, 619 F.3d 187, 199 (2d Cir. 2010). Whether NYCHA qualifies as a "victim" for purposes of N.Y. Penal Law §

13

155.35 (2010), potential challenges based on the statute of limitations, or whether New York law allows interest and penalties in the manner applied here do not furnish separate grounds for habeas corpus relief outside of petitioner's claims of ineffective assistance of counsel. See Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 875 (1984).

Finally, petitioner raises a claim of "prosecutorial vindictiveness." This, again, is based on the alleged non-indictability for the offenses to which he pled guilty and his counsel's failure to advise him of the defenses to these charges. One could certainly argue that this was a prosecution driven more by politics than wrongdoing. But that is not a ground for habeas corpus relief because, as noted above, it is not nearly as clear as petitioner contends that the crimes to which he pled guilty were non-indictable. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978). Having deferred to the state court's finding that petitioner received effective assistance of counsel in choosing to plead guilty, there is no basis for finding prosecutorial vindictiveness.

## CONCLUSION

The petition is denied and the case is dismissed. The question presented on petitioner's ineffective assistance claim is sufficiently substantial that it constitutes a showing by petitioner

of the possible denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). I therefore grant a certificate of appeal as to that issue only.³

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
         October 21, 2013

---

³ It could be argued that, when a habeas corpus petition is denied on the merits under an application of the Harrington standard of review, it is never appropriate to issue a certificate of appealability. The Second Circuit has quoted Slack v. McDaniel, 529 U.S. 473, 478, 120 S. Ct. 1595, 1601 (2000), as permitting issuance of a certificate only when "jurists of reason would find it debatable whether the petition states a valid claim." Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007). Yet as noted above, Harrington precludes the writ unless there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S. Ct. at 786. It is hard to reconcile the "substantial showing" required by the statute and the debatability among "jurists of reason" from Richardson that are necessary for a certificate of appealability with the "no possibility" of disagreement amongst "fairminded jurists" standard for granting a petition from Harrington. The only possible means of reconciliation requires the conclusion that there must be some space between a district court's review of a state court decision and the notional review of that district court's decision by "jurists of reason," however slight that space may be.